Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1023 | **DATE** | 5/7/2003 |
| **CASE TITLE** | RIVER WEST MEETING ASSOCIATES vs. AYAYA, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  **Motion (7-1) to dismiss is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAY 2 2 2003 | 11 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| DW | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RIVER WEST MEETING ASSOCIATES, INC., an Illinois corporation,

Plaintiff,

v.

AVAYA, INC., a Delaware corporation,

Defendant.

No. 03 C 1023
Judge James B. Zagel

DOCKETED
MAY 2 2 2003

## MEMORANDUM OPINION AND ORDER

Early last year, Avaya sought professional assistance in setting up, organizing and coordinating various corporate events, including several large events the company planned to hold at the Walt Disney World Swan and Dolphin Hotels in Orlando, Florida, from November 14 through 24, 2002. Following a competitive bid process, Avaya informed River West on April 25, 2002, that it had been selected as the supplier to coordinate the Florida Program. As part of its bid, River West had advised that it expected to be compensated for its services through a management fee based on the total estimated cost and content of the Florida Program. Although a management fee of 18 to 20 percent of the estimated program cost and content is alleged to be customary within the industry, River West submitted a bid reflecting a maximum management fee of 12 percent of the estimated cost and content of the Florida Program. In addition, River West advised that it expected to be reimbursed for its actual expenses incurred in planning and coordinating the Florida Program. Avaya selected River West to coordinate the Florida Program on this basis.



In late August 2002, after River West had been working on the Florida Program for four months, the parties entered into a written Service Agreement. The Agreement, which became effective July 30, 2002 and was to continue for one year, provided that River West was to be compensated for its services through a fee for work performed and expenses incurred in connection with the Florida Program. Although it did not specify the precise dollar amount, the Agreement noted that the management fee to be paid to River West for work done on the Florida Program was to be based on an amount not to exceed 12 percent of the total program cost and content. Under the Agreement, River West was entitled to 75 percent of the contracted management fee if the Florida Program was cancelled within fifty days of the operation date, but in the event of termination, Avaya's liability was "limited to payment of the amount due for work performed up to and including the date of termination."

On October 7, 2002, Avaya informed River West that another vendor had been engaged to coordinate the remainder of the Florida Program and that its services were no longer required. In an October 8 letter, Avaya confirmed this decision. On October 17, River West submitted an invoice to Avaya for work done and expenses incurred in working on the Florida Program up to and including the date of termination. This invoice included $409,367.75, reflecting 75 percent of the $545,823.66 management fee River West alleged it was owed based on 12 percent of the $7,728,299.10 total cost and content of the Florida Program as of September 20, 2002. The invoice also included $58,360.48 in out-of-pocket expenses. River West later submitted an amended invoice in the amount of $468,151.49 reflecting additional out-of-pocket expenses incurred prior to the date of termination. To date, River West has not been compensated for any of the services it provided or out-of-pocket expenses it incurred working on the Florida Program.

River West now brings this action against Avaya for breach of the Service Agreement (Count I), unjust enrichment (Count II), and breach of the implied covenant of good faith and fair dealing under New Jersey law (Count III), which governs the parties' agreement. Avaya has moved to dismiss River West's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) this Court is an improper forum; (2) the Service Agreement is void and unenforceable; and (3) the express language of the Service Agreement precludes the specific recoveries sought by River West.

Legal Standard

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Triad Associates, Inc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir. 1989). In reviewing a motion to dismiss, I must accept as true all of River West's well-pleaded factual allegations, and the inferences that can reasonably be drawn from them. Its complaint should be dismissed if it has failed to allege any set of facts upon which relief may be granted. *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990). But I need not accept as true conclusional legal allegations that the facts do no support. *Evans v. City of Chicago*, No. 01 C 6194, 2001 WL 1654769 (N.D. Ill. Dec. 20, 2001).

Forum Selection Clause

Under the Service Agreement, the parties agreed to submit to the jurisdiction of the state and federal courts of New Jersey. The Agreement provides:

> CHOICE OF LAW – The Agreement and all transactions under it shall be governed by the laws of the State of New Jersey excluding its choice of laws rules and excluding the Convention for the International Sale of Goods. . . . With respect to disputes between the parties, the parties agree to submit to the jurisdiction of the state and federal courts of New Jersey.

Avaya argues that this a mandatory forum selection clause and that River West has improperly brought this action in Illinois. River West argues that the clause is a choice of law provision and a permissive consent to jurisdiction and not a mandatory forum selection clause. While this clause arguably precludes the parties from contesting the exercise of personal jurisdiction by the courts of New Jersey, it does not make any specific venue obligatory or mandatory. Nor does it provide that New Jersey is the sole and exclusive form for resolution of any disputes between the parties. In such circumstances, the "law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Paper Exp, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). Accordingly, the provision neither deprives River West of its right to pursue its action outside of New Jersey nor strips this Court of jurisdiction over the parties' dispute. *See All-Tech Industries, Inc. v. Freitag Electronic, GmbH*, No. 87 C 10690, 1988 WL 84719, at *2 (N.D. Ill. Aug. 5, 1988) (finding that contract clause specifying "[p]lace of jurisdiction is Bad Segeberg, F.R.G." was merely a consent to venue and jurisdiction and not an exclusive form selection clause); *Walter E. Heller & Co. v. James Godbe Co.*, 601 F. Supp. 319, 320-21 (N.D. Ill. 1984) (provision in which lessee "submit[ted] to jurisdiction" of Illinois courts "merely established [Illinois] as a permissible forum with jurisdiction over [defendants].").

Count I: Enforceability of the Service Agreement

In order to state a claim for breach of contract under New Jersey law, a plaintiff must allege the making of a contract, the obligation thereby assumed, and breach. *Bauer v. City of Newark*, 81 A.2d 727 (N.J. 1951). The issue here is whether the Service Agreement constitutes a valid and enforceable agreement between the parties. Avaya argues that it does not because it neither establishes nor provides a method for determining the management fee to be paid to River West. Under New Jersey law, if the parties to a contract do not agree to one or more essential terms, they have failed to create an enforceable agreement. *MDC Inv. Property, L.L.C. v. Marando*, 44 F.Supp.2d 693, 699 (D.N.J. 1999) (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280 (N.J. 1992)). "The amount of compensation, the 'price term,' is an essential term of any contract. In the absence of an agreement as to the manner or method of determining compensation, the purported agreement [is] invalid." *Id* at 698-99. However, the voiding of contracts due to "missing" terms is not favored under New Jersey law. *E.g., Lynch v. New Deal Delivery Service*, 974 F.Supp. 441, 458 (D.N.J. 1997); *see also Truex v. Ocean Dodge, Inc.*, 529 A.2d 1017, 1021 (N.J. Super. App. Div. 1987) ("Even though one or more terms are left open a contract . . . does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."). Where the parties have assented to enter into an agreement, courts "are not reluctant to fill in gaps or interpret ambiguous terms." *Id.* at 457. This is true even where the gap or ambiguity concerns compensation or price so long as the parties "specify a practicable method by which the amount can be determined." *Moorestown Management, Inc. v. Moorestown Bookshop, Inc.*, 249 A.2d 623, 628 (N.J. Super. Ct. Ch. Div. 1969); *see also NBCP Urban Renewal Partnership v. Newark*

5

Count I: Enforceability of the Service Agreement

In order to state a claim for breach of contract under New Jersey law, a plaintiff must allege the making of a contract, the obligation thereby assumed, and breach. *Bauer v. City of Newark*, 81 A.2d 727 (N.J. 1951). The issue here is whether the Service Agreement constitutes a valid and enforceable agreement between the parties. Avaya argues that it does not because it neither establishes nor provides a method for determining the management fee to be paid to River West. Under New Jersey law, if the parties to a contract do not agree to one or more essential terms, they have failed to create an enforceable agreement. *MDC Inv. Property, L.L.C. v. Marando*, 44 F.Supp.2d 693, 699 (D.N.J. 1999) (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280 (N.J. 1992)). "The amount of compensation, the 'price term,' is an essential term of any contract. In the absence of an agreement as to the manner or method of determining compensation, the purported agreement [is] invalid." *Id* at 698-99. However, the voiding of contracts due to "missing" terms is not favored under New Jersey law. *E.g., Lynch v. New Deal Delivery Service*, 974 F.Supp. 441, 458 (D.N.J. 1997); *see also Truex v. Ocean Dodge, Inc.*, 529 A.2d 1017, 1021 (N.J. Super. App. Div. 1987) ("Even though one or more terms are left open a contract . . . does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."). Where the parties have assented to enter into an agreement, courts "are not reluctant to fill in gaps or interpret ambiguous terms." *Id.* at 457. This is true even where the gap or ambiguity concerns compensation or price so long as the parties "specify a practicable method by which the amount can be determined." *Moorestown Management, Inc. v. Moorestown Bookshop, Inc.*, 249 A.2d 623, 628 (N.J. Super. Ct. Ch. Div. 1969); *see also NBCP Urban Renewal Partnership v. Newark*

5

*City*, 17 N.J. Tax 59, 75 (1997). Moreover, courts may also resort to commercial practice or other usage or custom to fill in the gaps, even for contracts where, the "exact amount of compensation was left for later agreement." *Lynch*, 974 F.Supp. at 458.

Here, the Service Agreement between River West and Avaya is enforceable. First, it is clear that the parties intended to make a binding contract, and this expressed intent is an important factor in my decision. Second, even though the Agreement does not provide an exact management fee for work performed on the Florida Program up to and including the date of termination, it provides a reasonably certain basis for determining an appropriate fee. The Agreement contemplated a management fee in an amount "not to exceed 12% of the total cost," which is certainly a knowable or determinable figure. Furthermore, the management fee is to be "based on the estimated man hours required to complete the contracted tasks," once again a knowable or determinable figure. But even if the contemplated management fee could not be determined from a practicable method specified in the Agreement, River West alleges that a management fee of 18 to 20 percent of the estimated cost and content is customary within the industry, and therefore industry custom and practice could be used to fill in any gaps in the Agreement regarding compensation. And even if the management fee cannot be determined from a practicable method specified by the Agreement or through industry custom, River West additionally seeks, under the Agreement, reimbursement for expenses incurred in working on the Florida Program. Therefore, even if it has no valid claim for the management fee, it still has a valid claim for expenses incurred. Accordingly, there is no basis for dismissing Count I in its

entirety on the ground that the Service Agreement is unenforceable.[1]

Count II (Unjust Enrichment) and Count III (Breach of Implied Covenant of Good Faith and Fair Dealing)

Even assuming that River West has somehow failed to state a claim for breach of contract, Avaya's motion to dismiss the entire complaint must be denied because River West has adequately stated causes of action for unjust enrichment (Count II) and for breach of implied covenant of good faith and fair dealing under New Jersey law (Count III), and Avaya's motion does not challenge the sufficiency of these claims.

For the reasons above, Avaya's Motion to Dismiss is DENIED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 7 May 2003

---

[1] I disregard Avaya's argument that River West is not entitled to the relief it seeks (75 percent of the management fee) because the provision upon which it relies – regarding Program cancellation – is not applicable. The only issue raised by the argument is how much Avaya owes River West, not whether it owes them anything at all. Accordingly, this argument provides no basis for dismissing Count I.

7